FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 02, 2026

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| OREGON POTATO COMPANY, a Washington State Corporation; and the OREGON POTATO COMPANY GROUP BENEFITS PLAN,<br><br>Plaintiffs,<br><br>v.<br><br>DARRELL STRONG, individually, and his marital community; MARSH & McLENNAN AGENCY LLC, a Washington Limited Liability Company; and DWS Holdings LLC, a Washington Limited Liability Company, d/b/a PINNACLE PEAK ADMINISTRATORS and DEDUCTIBLE REIMBURSEMENT COMPANY,<br><br>Defendants. | No. 4:25-cv-05139-MKD<br><br>ORDER DENYING DEFENDANT MARSH & MCLENNAN AGENCY LLC'S MOTION TO DISMISS<br><br>**ECF No. 15** |

Before the Court is Defendant Marsh & McLennan Agency LLC's Motion

to Dismiss. ECF No. 15. Christine Hawkins and Richard Birmingham represent

Plaintiffs. Jessica R. Maziarz and Eliot T. Burriss represent Defendant. The Court

ORDER – 1

has considered the briefing and the record and is fully informed.  For the below reasons, the Court denies the motion.

## BACKGROUND

The following facts are alleged in Plaintiffs' First Amended Complaint. ECF No. 9.  Plaintiff Oregon Potato Company ("OPC") is the sponsor and plan administrator of the Oregon Potato Company Benefits Plan ("the Plan"), an ERISA Medical Plan including medical and prescription drug benefits, minimum essential coverage, and health reimbursement.  ECF No. 9 at 3-4, 8.  Defendant Marsh & McLennan Agency ("MMA") provided brokerage and consulting services to the plan.  *Id.* at 8.  DWS Holdings provided services and exercised control over assets of the Plan directly and through its d/b/a Pinnacle Peak Consultants ("Pinnacle Peak") and Deductible Reimbursement Company ("DRC").  *Id.*  Darrell Strong advised and provided services for the Plan.  *Id.*

In 2023, Defendants MMA and Strong proposed that OPC change the Plan from a fully insured plan to a guaranteed level funded premium plan.  *Id.* at 8. Under the proposal, OPC would commit to paying a level amount towards benefits for two years and MMA and Strong guaranteed the payments would be sufficient to pay claims under the employer-paid plan.  *Id.*  The funding would be sourced from a level employer-paid premium, an HRA employer-paid premium, stop loss insurance, and a banking management fee paid to Strong and Pinnacle Peak to

ORDER – 2

manage the stop loss and manage claims.  *Id*. at 9.  OPC agreed to the proposal, which was set to begin October 1, 2023, and end September 30, 2025.  *Id.*

MMA's role in this transaction was to manage the brokerage relationships and assist Pinnacle Peak in maintaining a guaranteed level premium for the Plan. *Id.*  At the end of the first year of the Plan, MMA and Strong reported that both the ERISA Medical Plan and ERISA HRA funding balances were positive.  *Id.* at 11.

In April 2025, OPC began to receive fee disclosures for the Plan Year 2023 IRS Form 5500 filing, which showed the full extent of compensation being paid to Strong and Pinnacle Peak.  *Id.* at 12.  The management fees in total amounted to $1,921,217 for the first year and an additional $800,000 for the second year.  *Id.* On May 22, 2025, after reviewing the Form 5500 disclosures, OPC formally notified Strong that OPC was terminating the relationship and a new broker was appointed.  *Id.*

On May 30, 2025, MMA notified OPC that there was a problem with the ERISA Medical Plan funding, but quickly reported the issue was cured.  *Id.*  at 12-13.  Despite a request, OPC did not receive a cash flow report from Strong, Pinnacle Peak, or MMA, or any other communications for three months.  *Id.*

On September 3, 2025, OPC disbursed funds to the monthly medical and HRA claims.  *Id.*  On September 12, 2025, OPC received an email from Strong indicating the Plan had a deficit balance of around $600,000 and Premera, a third-

ORDER – 3

party administrator and adjudicator of medical claims, was instructed to redirect all medical claims to OPC and no longer pay the claims.  *Id.* 13.

The ERISA HRA account statements indicate that Strong had transferred $207,790 from the ERISA HRA account into the general OPC medical account.  *Id.* at 13.  After the transfer, the HRA account had a balance of $871,397.53, but Strong stopped the processing of all claims.  *Id.*  Before the transfer, the ERISA HRA had a positive account balance of $1,079,187.  *Id.*

Plaintiffs assert this was the utilization of assets of one client to satisfy the obligation of another, in violation of ERISA fiduciary duty,state insurance law, and federal law.  *Id.* at 14.

On November 25, 2025, Plaintiffs OPC and the Plan filed a First Amended Complaint.  ECF No. 9.  Plaintiffs bring four causes of action against Defendants Darrell Strong, MMA, DWS Holdings LLC d/b/a Pinnacle Peak Consultants, and Deductible Reimbursement Company, as follows: (1) Equitable Relief under ERISA Section 502(a)(3) against Strong and DWS, (2) Violation of Fiduciary Duties under ERISA Sections 404 and 405 against all defendants, (3) Failure to Disclose and Misrepresentation against Strong and DWS, (4) Engaging in Transactions Prohibited under ERISA Section 406 against all defendants.

Defendant MMA now moves to dismiss based on a failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

ORDER – 4

**LEGAL STANDARD**

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).  In considering a motion to dismiss for failure to state a claim, the Court must accept as true the well-pleaded factual allegations and any reasonable inference to be drawn from them, but legal conclusions are not entitled to the same assumption of truth.  *Id.*  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* (citing *Twombly*, 550 U.S. at 555).  "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss."  *Id.* at 679 (citing *Twombly*, 550 U.S. at 556).  A complaint must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory.  *Twombly*, 550 U.S. at 562.  "Factual allegations must be enough to raise a right to relief above the speculative level[.]"  *Twombly*, 550 U.S. at 555.

**DISCUSSION**

Defendant MMA contends that Plaintiffs have failed to state a claim because: (1) the complaint fails to allege MMA is a fiduciary or performed

ORDER – 5

fiduciary acts, (2) the complaint fails to allege MMA breached a fiduciary duty, and (3) the complaint fails to allege a prohibited transaction claim.  ECF No. 15.

As a preliminary matter, MMA requests the Court consider the Service Agreement that OPC and MMA entered into on or about October 1, 2023.  ECF No. 15 at 11, 15.  MMA argues that "[t]he Service Agreement entered into between MMA and OPC expressly provides that MMA is not a fiduciary, and that OPC retained the ultimate decision-making authority with respect to all decisions concerning the Plan."  *Id.*  MMA asserts that the Court may consider the Service Agreement "under the incorporation by reference doctrine because the document controls the relationship between MMA and Plaintiffs. . ."  *Id.* at 11.  Plaintiffs argue that considering the Service Agreement would be improper because "the liability caused by the relationship between MMA and Pinnacle is simply not the subject matter of the Service Agreement between OPC and MMA and, therefore, is subject to independent claims of fiduciary breach and prohibited transactions."  ECF No. 17 at 21.

"Generally, district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure."  *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018).  "[I]f a district court considers evidence outside the pleadings, it must normally convert the 12(b)(6) motion into a Rule 56 motion for summary

ORDER – 6

judgment, and it must give the nonmoving party an opportunity to respond." *U.S. v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). A document may be "incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of plaintiff's claim." *Id.*

The First Amended Complaint does not reference the Service Agreement between OPC and MMA. ECF No. 9. Plaintiffs allege that "[t]he Plan has no contractual relationship with either Strong or Pinnacle Peak, other than an HRA contract with DRC. Marsh & McLennan exercised discretionary control over the Plan administration by retaining Pinnacle Peak. . ." ECF No. 9 at 10. The basis of the claims involves MMA's relationship with Pinnacle Peak.

Further, even if the Court considered the Service Agreement and the Service Agreement states that MMA is not a fiduciary, "[i]f an ERISA fiduciary writes words in an instrument exonerating itself of fiduciary responsibility, the words, even if agreed upon, are generally without effect." *IT Corp. v. General American Life Ins. Co.*, 107 F.3d 1415, 1419 (9th Cir. 1997). "ERISA defines fiduciary not in terms of formal trusteeship, but in *functional* terms of control and authority over the plan, thus expanding the universe of persons subject to fiduciary duties – and to damages – under § 409(a)." *Id.* (emphasis in original). Therefore, the Service Agreement's terms are not dispositive as to whether MMA is a fiduciary.

ORDER – 7

**A. Fiduciary Status**

Defendant MMA first argues that Plaintiffs fail to "plausibly allege that MMA is a fiduciary or performed any fiduciary acts." ECF No. 15 at 13. Plaintiffs argue that they have adequately alleged that MMA is a functional fiduciary. ECF No. 17 at 14.

ERISA fiduciary status is construed "liberally, consistent with ERISA's policies and objectives." *Johnson v. Couturier*, 572 F.3d 1067, 1076 (9th Cir. 2009). "There are two general categories of fiduciaries under ERISA – named (or statutory) and functional." *Acosta v. Brian*, 910 F.3d 502, 516 (9th Cir. 2018). "A party not named in the plan instrument can become a functional fiduciary." *Id.* For example,

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary

ORDER – 8

authority or discretionary responsibility in the administration of such plan.

*Id.*; 29 U.S.C. § 1002(21)(A).

It is undisputed that MMA is not a named fiduciary. In the First Amended Complaint, however, Plaintiffs allege that MMA is a fiduciary because it "exercised management control by granting Pinnacle Peak control over banking relationships for the Plan." ECF No. 9 at 10. Plaintiffs also allege "Marsh & McLennan further exercised discretion over management and over the assets of the Plan by guaranteeing a level premium." Although MMA disputes whether it had discretionary authority or discretionary control regarding management, the First Amended Complaint sufficiently alleges that MMA is a fiduciary.

**B. Breach of Fiduciary Duty**

Defendant MMA next contends, even if Plaintiffs sufficiently alleged MMA's fiduciary status, that Plaintiffs fail to allege that MMA breached its fiduciary duty. ECF No. 15 at 21.

"[A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . for the exclusive purpose of (i)

ORDER – 9

providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1).

Plaintiffs allege MMA breached this duty when it and other defendants, "misrepresented the nature and purpose of the fee . . . causing excessive fees to be paid, breaching a fiduciary duty, and causing the Plan to enter into transaction prohibited by ERISA." ECF No. 9 at 15. Accordingly, Plaintiffs have sufficiently alleged that Defendant MMA breached its fiduciary duty.

**C. Prohibited Transaction Claim**

Defendant MMA argues that Plaintiffs fail to allege a prohibited transaction claim. ECF No. 15 at 24. Plaintiffs argue that they have sufficiently pleaded a prohibited transaction claim against MMA pursuant to 29 U.S.C. § 1106(a).

Under 29 U.S.C. § 1106(a), "a fiduciary shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect . . . furnishing of goods, services, or facilities between the plan and a party in interest." *Bugielski v. AT&T Services, Inc.*, 76 F.4th 894, 900 (9th Cir. 2023). "At the pleading stage . . . it suffices for a plaintiff plausibly to allege the three elements set forth in § 1106(a)(1)(C)." *Cunningham v. Cornell University*, 604 U.S. 693, 702 (2025).

Plaintiffs allege that "Defendants have used their status as a service provider and their status as a fiduciary to cause the Plan to enter into the following

ORDER – 10

prohibited transaction: (1) the payment of excessive fees for services performed, (2) the transfer of Plan assets for the use or benefit of a party-in-interest, and (3) the receipt of assets on their own account for a transaction involving the assets of the Plan." ECF No. 9 at 20.  Accordingly, Plaintiffs have sufficiently alleged the elements required for a claim under 29 U.S.C. § 1106 (a)(1).

<strong>CONCLUSION</strong>

For the reasons stated above, the Court denies Defendant MMA's Motion to Dismiss.

Accordingly, **IT IS HEREBY ORDERED:**

1. Defendant MMA's Motion to Dismiss, **ECF No. 15**, is **DENIED.**

**IT IS SO ORDERED.**  The Clerk's Office is directed to enter this Order and provide copies to counsel.

DATED March 2, 2026

<em>s/Mary K. Dimke</em><br/>MARY K. DIMKE<br/>UNITED STATES DISTRICT JUDGE

ORDER – 11